21-2985 Skatemore, Inc. of Michigan Corporation et al. v. Gretchen Whitmer in her official capacity as Governor of the State of Michigan et al. Oral argument not to exceed 15 minutes per side. Mr. Kallman for the Plaintiff's Appellants. Good morning. You may proceed. Good morning. I would like to reserve five minutes for rebuttal. All right. May it please the Court, Steve Kallman here on behalf of Plaintiff's Appellants Skatemore and all Plaintiff's Appellants. Also with me today is Co-Counsel David Kallman at Council Table. And I realize we have a short time this morning so I just want to hit a few high points. There's a lot of briefing in this case, obviously. So what I want to hit is sovereign immunity and police power. Those are the two issues I'd like to highlight today. Obviously as we've outlined in our brief, our main argument is that the Fifth Amendment operates as a waiver to the Eleventh Amendment. The Supreme Court, the U.S. Supreme Court has never directly ruled on this issue. They have hinted at it, especially I would Is your theory that the Fourteenth Amendment modifies the Fifth Amendment? I mean the Eleventh Amendment is passed, obviously, after the Fifth Amendment. But your theory is that somehow the Fourteenth Amendment nullifies the Eleventh Amendment? Well, two points to that, Your Honor. First, that one of the recent cases that I cited from the U.S. Supreme Court last year, Penny's Pipeline from 2021, said that when a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action. Your theory is that the states have waived their immunity by adopting the Fourteenth Amendment? Essentially, yes. So the continuation of that quote says such consent may, as here, be inherent in the constitutional plan. And so as we're all aware, the Fifth Amendment was ratified in 1791 and the Fourteenth in 1868. And so, obviously, when they ratified the Fourteenth Amendment, they were aware of both, the Fifth. Is there any history that the states intended to do this when they ratified the Fourteenth Amendment? Well, I would say that this is, the takings jurisprudence has been changing over the decades and that the most recent Supreme Court decision, as they're interpreting it, has outlined this way That's a good question. I mean, I look to what the text of the amendments states and how it was understood by the ratifiers of the amendments. I think that's what you do. And I mean, do you have any support that the ratifiers of the Fourteenth Amendment intended to abrogate state immunity? I would say it's just the plain language of the Fifth Amendment itself, because that's the only amendment that actually But the Eleventh Amendment modifies the Fifth Amendment, right? And that's the later one. So I mean, if we're just talking about the Eleventh and the Fifth, the Eleventh Amendment was enacted to protect the states from suits, the federal court. Exactly. And takings cases too. I would say that the Fourteenth Amendment was passed after the Eleventh. So when the states ratified the Fourteenth, they were aware of both the Fifth and the Eleventh. And so that's why Do you have any support for your argument from any court anywhere in the United States? Just the Supreme Court cases we cited in our brief in the plain language of the Fifth and Eleventh Amendments. The pipeline case you're talking about, was that decided prior to the Supreme Court's case in Nick? It was decided after. Okay. I believe Nick was 2019 or around there, and Penn East Pipeline was decided in 2021, about nine months ago. All right, that answers that. I do want to address one point that opposing counsel raised, that the Fourteenth Amendment wasn't incorporated to the states until about 30 years after. And so his argument was that that was something the court did later, and so it wasn't what was originally intended by when the states ratified the Fourteenth Amendment. But in the case that actually incorporated the Fourteenth Amendment, Chicago v. City of Chicago from 1897 on page 239 says, and this is U.S. Supreme Court, the conclusion of this court on this question is that since the adoption of the Fourteenth Amendment, compensation for private property taken for public use constitutes an essential element of due process of law. So the court's holding wasn't that since 1897, it was their holding was that no, since they originally ratified it 30 years prior, since the adoption of the Fourteenth, that's how it was understood. I also want to address a point that Your Honor raised about nullifying other amendments. That is not our position. Our position is that the Fifth Amendment is the only amendment that specifically has language for damages or just compensation. There's no such language in the First, Second, or any of the other amendments. And so our theory that we're proposing here would not open the floodgates to damages cases for virtually any constitutional claim because the First Amendment doesn't provide any language for just compensation. Only the Fifth does. And another point that I would make is just because a plaintiff is able to get past Eleventh Amendment immunity, that doesn't mean that they automatically win the case or anything like that. There's just one hurdle that they have to get past. And they still have to obviously prove their merits and everything like that. So I disagree that a holding in that form would open the floodgates. Okay. Well, getting to the merits, if somehow you get past immunity as to the governor and the director, how is it clearly established law that what they did here was unconstitutional? And that's what you would have to prove as to the merits, that it's clearly established that this is unconstitutional. Not a violation of Michigan law, which is what the Supreme for the federal law. Right. Are you referring to qualified immunity of the governor? Yes. Yes. Yeah. So as of right now, the governor is not included in her individual capacity. That's your motion to amend. We filed the motion to amend to include her in the individual capacity. So the lower court and the parties have never had an opportunity to brief that issue or argue that issue. Well, one of the issues is whether it's futile to amend your complaint to bring claims against the governor and the director in their individual capacity and the district court ruled it would be futile. Tell me why it's not futile. We cite numerous cases in our brief outlining how, I believe it's in the 30s, outlining how if a government official acts in an unlawful way, that they are acting outside of their official authority. Doesn't it have to be unconstitutional rather than unlawful? I mean, the Michigan Supreme Court found the governor acted unlawfully, but I don't think they found that it violated the U.S. Constitution. That's correct. You're right. They did say, they found that she acted unlawfully and I suppose unconstitutionally, or at least the statute was unconstitutional according to the Michigan Constitution. Yes. We're dealing with federal law. Right. And so I would say that the cases that we cite in our brief outline how if a government official acts outside of their authority in an unlawful manner or without authority, as she did by not properly using her executive orders, that that would be a reason to get past qualified immunity. I'm running short on time, so I'm going to jump to my next issue because there's a couple of points that I wanted to make. All throughout opposing counsel's brief, and they cite numerous other cases where other COVID restrictions have been upheld and held that they weren't takings in other states and jurisdictions. And I would argue that our case is very different than those because most of those other cases relied on the police power doctrine and the argument that, well, those restrictions were done pursuant to the state's police power and therefore it cannot be a taking. We cite, I would argue that all of those cases, they can all be traced back to, and I believe almost every case cites Muggler v. Kansas, a U.S. Supreme Court case. And we cite that there in our brief that says a prohibition simply upon the use of property for purposes that are declared by valid legislation cannot be a taking. So that's our key point is that in this case, and that's what makes this different than every other case, is that the actions in this case were not done by valid legislation. And there's two points on that. First, obviously it wasn't valid because the Michigan Supreme Court has already struck it down. And second, it wasn't even done by legislation. It was done by executive order. The other point that opposing counsel makes is that, and the district court found this too, that because the governor's orders were issued in March and April and then continued on through the summer and then the Michigan Supreme Court did not strike it down until October 2nd, that the October 2nd decision can't be applied retroactively to say that what she was doing before that was wrong or unlawful or not proper. To counter that, I would argue that nothing in that Michigan Supreme Court decision said that it was not to be applied retroactively. And in Michigan for civil cases, I'm citing here Michigan Supreme Court Hyde, H-Y-D-E, the University of Michigan Board of Regents, 426 MISH 223 from 1986. They said in civil cases, quote, the general rule is that judicial decisions are to be given complete retroactive effect. So Michigan law holds that decisions like this are to be retroactive. So I would argue that that's not a defense to say, well, because it took time to get through the judicial process that she can escape liability or escape or say that her police power use was proper. I'm going to get around the case law that says that there needs to be either a complete physical taking or if it's a categorical taking, the property owner has to be deprived of all use of the property or all of the economic benefit and we don't have that here. These bowling alleys were impacted and obviously their business reduced but they weren't told that they had to completely shut down and couldn't do anything. They could dispense food and other things and it was temporary in nature, the governor's edict. So how do you get around the argument that in the absence of a categorical taking, you can't satisfy the criteria for this having been a taking? Well, a couple of points to that and I know I'm over time but we allege in our complaint that they were completely shut down because we cite the orders that say they were completely closed to egress, ingress and all those things. As an example, I was just talking to the owner of Skatemore a little while ago and they're a roller skating rink, four are bowling, one's a roller skating rink but they were all shut down by the same orders. Skatemore doesn't have a kitchen, they don't have takeout food, they were just a roller skating rink so they were 100% shut down. There was no other option. There's no takeout roller skating so under those orders, they were completely shut down so we argue in our brief that in this case, there are grounds to be a categorical taking but then we argue in the alternative that you could use Penn Central. So I know I'm out of time. That's fine. If I can ask a couple more questions. Can you cite to me courts from other jurisdictions that have found a takings constitutional violation based upon COVID orders? I cannot and I think there's a good reason for that. I'm not aware of any other jurisdiction where that state or frankly any authority has struck down the COVID orders that the other states have done. I know in Pennsylvania, they cite the Danny DeVito case. Those orders were upheld as being authorized under their state law. So the distinction you say is because she operated in violation of Michigan law when she did her executive orders that that should make it a takings. In regard to your motion to amend, you want to amend your complaint to sue the governor and the director in their personal capacity. Don't we have published authority from our court, Victory v. Walton, a 1984 published order of this court, which says that officials cannot be sued for a takings claim in their individual capacity, but have to be sued in their official capacity, which is what you did in the original complaint. How do you get around the Victory v. Walton case? Your Honor, I would just go back to the cases that we cited in our brief for the unlawful activity that gets around in the Supreme Court cases. The factual distinctions. Yes. All right. Thank you. Good morning, Your Honors. May it please the court. Assistant Attorney General Daniel Payne appearing on behalf of all defendants. Your Honors, the district court granted our motion to dismiss based on our 11th Amendment immunity defense. So is your position that, I know that Michigan has statutes governing eminent domain, but let's say they didn't, are you saying that if it's the state, the state can take whatever property it wants and is protected by the 11th Amendment against a federal claim? Well, Your Honor, I think in the context of a takings claim, that might be true based on the circumstances of the case, whether the state chooses to invoke its 11th Amendment immunity or waive it and so on and so forth. I'm not saying that a plaintiff in this position is necessarily precluded from invoking this idea of ultra-virus activity. What I'm saying is that it does not sound in the Fifth Amendment's taking clause. That is going to be a case that's properly brought under perhaps the 14th Amendment, something like that. And you get a lot of discussion of that in the Lingle versus Chevron case, which says that an inquiry probing a regulation's underlying validity is logically distinct prior to the question whether a regulation affects a taking. So it's just not a takings claim. And in fact, I think it's the Dow case from the Supreme Court that says a state can go take the property and deal with the just compensation component at a later date and time. But we're asking how you feel with that now. That's true, Your Honor, but I don't think that the lack... My point is just that the alleged lack of a statutory authorization in state law books, it's not relevant to this inquiry. It's going to be a separate type of claim that doesn't sound in the Fifth Amendment. Another reason that that issue isn't relevant here, and opposing counsel mentioned there's been a lot of briefing in this case, but to date they have not responded to the claim that MDHHS issued independent orders that would have caused the same closures at all relevant times. So any path to relief that travels through this point about in-race certified questions and the governor's authority, that's going to fail for lack of standing because there's no causal connection between that state court case and what happened here because of the independent orders. And you can see after the in-race certified questions case, the Department of Health and Human Services continued to use its authority under a completely separate statute in a different part of the Michigan compiled laws to effectuate these same kinds of public health measures. And I still haven't heard anything from plaintiffs about that. Because they're public health measures, is that part of the police powers? They're arguing this was not done pursuant to the defendant's police powers, but usually police powers are for the safety, welfare of the public and I think their executive order and the health orders were in that vein, were they not? That's right, your honor, they were. They both pursued the same general objective and they say so right on their face, which the Supreme Court has found relevant in past determinations whether something is issued under the police power. I think their only objection to or their only response to our police power claim is this idea about the governor's authority being undermined at a later date. So if you take that out by looking at the independent authority of the Department of Health and Human Services, you're really left with no response to our police power defense. And that's been a very consistent theme in taking jurisprudence that this kind of regulation does fall outside of the Fifth Amendment. And the reasons for that are pretty obvious because you don't, when you're facing down an emergency, especially one of historic proportions like this, you don't want the state to be sitting back and waiting and thinking, you know, can we afford to do this or are we going to have to compensate everybody? You need to act swiftly to abate this kind of deadly nuisance. And, you know, property in the United States has always been held on the condition that you're not going to use that property to endanger the lives of others. And I'm certainly not accusing the plaintiffs of having that intention, but that was the point of all these measures. So, you know, this court can and should affirm the district court's Eleventh Amendment conclusion based on the Ladd v. Marchbank's case. That was a unanimous published case issued by this court just two years ago that held unequivocally that the Eleventh Amendment does cover Fifth Amendment takings claims against the state. Now, I think plaintiffs selectively quote some passages from Nick. We've covered this in our briefing. Nick said nothing about sovereign immunity, so you can't really attribute to the Supreme Court any intention to address this issue. Regarding their argument that the Fourteenth Amendment somehow causes the Fifth to leapfrog the Eleventh through incorporation, they rely on the text of the Fifth Amendment. But if it was true that the text of the Fifth Amendment was sufficient to avoid the Eleventh by incorporation, then you'd expect that the federal government likewise would not have sovereign immunity against a takings claim. But it's always been the case that the Tucker Act has been necessary to find the federal government waived its sovereign immunity from a takings claim. The Bill of Rights were never applicable to the states until the Fourth Amendment and until Supreme Court decisions incorporated the Bill of Rights. To say that the Fifth Amendment originally was intended to apply to states is just nonsensical because, no, the Constitution and the Bill of Rights were limited strictly to the federal government. That's only through incorporation of the Fourteenth Amendment. So you'd have to say that the Fourteenth Amendment somehow repealed the Eleventh Amendment as to takings or I can't even figure out what the argument is. The fact that it may be unfair that the Fifth Amendment applies to the federal government not the state governments, that's the structure of the Constitution unless it's been changed by the Fourteenth Amendment. That's right, Your Honor. Even I think the Fifth Amendment itself also is subject to the federal government's sovereign immunity but for the Tucker Act. But you talk about the text of the Fifth Amendment, the text of the Fifth Amendment applies only to the federal government just like the First Amendment, Congress shall pass no law. I mean a lot of it, it's actually very specific and it was never intended to apply to states at the time. Yeah, and I think if you go back to Hans v. Louisiana which is the case that held that the Eleventh applied to citizens of a state against their own state and that case was issued I think 20 years after the Fourteenth Amendment was ratified. They talk about the understanding of what the states expected to give up at various stages of the ratification process and it's very clear that there was no understanding in the mid-1800s that the states were consenting to be sued in this regard. So plaintiffs, they can't point to any case in support of this position. It's extremely novel and it's simply not a basis for us recognizing what would be such a sea change in the law. And I think Ladd v. Marchbanks in a footnote even talks about the relationship between the Fourteenth and the Fifth Amendment in this very context. So I just want to move on. The court's absolutely correct that this court in Vickery said that a Fifth Amendment claim is just fundamentally incompatible with an individual capacity suit. So we would ask the court to affirm the district court's decision to deny that motion to amend. I note although it was a denial of an en banc petition, it did state that it, quote, fully considered the petitioner's arguments in this regard. Victory is a published order. It's not a published opinion. Are the published orders of our court precedentially binding upon us? I believe they are when I, I shouldn't guess, Your Honor. No, do you have authority for it? I don't have authority, but I, I thought they were until I got to this case and now there's an argument that, that our published opinions are precedentially binding upon us, but our published orders are not. And that's new to me, but is there authority on it either way? I can't give you any case names, Your Honor, but in general it's, it's my belief that when an order gives you the rationale in such certain terms, it, it is binding on the court. But I don't want to mislead you, Your Honor. I don't have any cases. You don't have the authority. I don't have any cases. I don't. I'd be happy to supply some in a supplemental brief if you'd like. And you distinguish Penn East on the basis that they're the federal government, who's the plaintiff? That's right, Your Honor. I mean, Penn East, I think is the origin for plaintiff's idea about consent in the constitutional plan. But Penn East was the federal government and there's, it was about the federal government's supremacy over the state government. And that's the kind of thing that, you know, it's more or less obvious that the states understood that they were ceding that measure of their sovereignty at the founding. And that's the kind of, that's the kind of unequivocal consent that, that this court needs to recognize that kind of waiver of, of 11th Amendment immunity. And plaintiff's theory about the 5th and the 11th and the 14th is, is, is not unequivocal in that regard. So Penn East is definitely distinguishable on that basis. Well, Your Honors, if there are no other questions, you know, the defendants are entitled to 11th Amendment immunity. Plaintiffs have offered no case law whatsoever that gives this court any reason to doubt that conclusion. The Ladd v. Marchbanks case is pretty much on all fours and binds this court. Even if it didn't bind this court, there's nothing persuasive that I'm hearing from the other side about why this court should disagree with Ladd v. Marchbanks. And for that reason, we would ask this court to affirm the district court, which dismissed the case and denied the motion to amend. And the amendment, the request to amend? I'm sorry, Your Honor? The request to amend? What about it? Well, I, I take it you're saying it would be futile, but you're, I mean, are you saying the 11th Amendment would apply even in the individual capacity? No, Your Honor, I can talk about that motion to amend if you like. The, the, the motion to amend, you know, it's, it's, we talked about Vickery, Vickery says that an individual capacity claim isn't really coherent when it is applied to a takings claim. That's fundamentally a government action. You can see it in the phrase public purpose. That's what the court kind of hung its hat on in Vickery. It's also the case that we're, we're, if, if that motion to amend is granted, we are going to raise a qualified immunity defense and the second prong of that defense asks whether the right is clearly established. We've cited in a footnote 26 cases in federal courts nationwide that, that hold that these kinds of public health measures issued in an emergency fall outside of the takings clause. So there, there's no argument in their briefing or here today that this was a clearly established right such that the decision makers here would have understood that they were, that they were entering the Fifth Amendment territory. And that, those are all the rationales that were relied on by the district court. And we think they're very good. So if there are no other questions. What about the argument that the Supreme Court's case in Nick may have rendered Vickery obsolete? I haven't heard that argument, Your Honor, but, you know, Nick is. Case against municipalities. It's not against. Yeah. I, I just, I haven't heard that, that argument before today. That Nick would probably be argued in support of a contention that officials can be sued under 1983 and maybe that could be applied to these takings cases. I think the only thing decided in Nick was that this, this state court exhaustion requirement that had been applied to plaintiffs like these was no longer in effect. So to the extent that something in Nick can be read to suggest that rule of law, it would be, it would be dicta. Well, it did apply, it was involving municipalities. So there, there are arguments, obviously, that could be made, made both ways, but. All right. Thank you. I see that you're out of time. All right. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you. And we'll have rebuttal. All right. To briefly respond to a few of those issues. The first, regarding the MDHHS orders, there's two things that we raised in our complaint. There was the executive orders that Whitmer issued and then there were the orders issued by Director Gordon under MDHHS. We filed this lawsuit in January of 2021. And at that point, the Michigan Supreme Court had already struck down the governor's executive orders. But as to the MDHHS orders, those were still working their way through the court system and we didn't know at the time that we filed the complaint whether or not they would be struck down. It turns out they were not. And so that's why we would not really address the MDHHS orders in our, in our brief and we are focusing on the executive orders because, again, as I said earlier, the big distinguishing factor in this case is that unlike every other jurisdiction in the country, we have a Michigan Supreme Court decision that struck down the orders and the COVID regulations as being unlawful. And so that's, that's the heart of this case. Another point that I would make is I heard one of the, one of your honors talk about, you know, how this could affect so many businesses and basically any business could come forward. I believe that this ruling would not. Our cases are a bit different. You know, if a government wants to introduce a regulation and it, it, businesses have to comply with regulations all the time. I think in this case the difference is, is our case law says in our brief that these regulations went too far and as I mentioned earlier with Skatemore, they were completely shut down. They had no other option. They were completely closed and I believe the quote from the executive order is, close to all access from the public for ingress, egress. So they were completely shut down. So I would, I would argue that the plaintiffs in this case are not only different from the rest of the country because we have unlawful orders here, they are also different than most of the other businesses in Michigan because they were completely shut down. I also want to address the Vickery case and just make a very brief distinction there. In that case in Vickery, the, the government officials that were sued possessed no takings power. They were lower level government officials and I don't think anyone in that case argued that, you know, a random government employee has a takings power. And so they said, well, of course, a random person who doesn't have a takings power in the first place cannot exercise takings power. That is completely different in this case because the defendant is the governor. She does have a takings power. She took it for the public use and because it's a public use taking, doesn't that show that it's, it's for the state that she's being sued in her official capacity because the state took it, not, not, not that the governor took it. Well, we argue both in our brief. I mean, she, she's not taking the bowling alley. I mean, the, the state is allegedly taking the bowling alley by shutting down. It's, I mean, she, she doesn't, you know, it's, it's on behalf of the state of Michigan. We're not arguing that Governor Whitmer personally came in and took the bowling alley or anything like that. So, no, we're saying that she used the color of law. She used her position. She used her authority. But it's for a public purpose, public use. And I think that kind of distinguishes this from the run-of-the-mill constitutional torts where an individual will, will do a constitutional tort here. It has to be public use and to me, that's, that's, that's for the state and not, not on behalf of the individual. So how do you, how do you argue against that? I think we're all in agreement that it was for public use. After all, that's one of the requirements in order to have a taking. I think the true question is whether or not it was done through the police power to do it. Because if the government takes property for public use, you know, they confiscate property to build a highway, that's for public use, but they can be compensated. So the true question is not whether it's for public use. I think we all agree on that point. The issue is, did she properly exercise her police power to do it or did she do it pursuant to a takings power? And again, because of the unlawful use of the executive orders, we're saying that that knocks out the police power option. And so she did it under the takings power. Does that answer your question? Yeah. Thank you. You know, what about the temporary nature of the taking? I guess your opposing counsel would argue that you were not, your clients were not deprived of all use. There were other uses to which they could have put the property, but in any event, it was completely temporary that they were deprived of the property if they were. What would you say about that? I would make a couple of points on that. First, we cite numerous cases in our brief how temporary takings can be compensable. And I would also draw a distinction between one of the cases they cite, the temporary taking was only dealing with real estate, whereas in this case, as we outlined in our brief, that's not the only thing that was temporarily taken. The business interest, the going concern of the business, the personal property that was inside the business, and the real property. So there was more, it wasn't just vacant land that they held up for a few years. This was a running, operating business that they took, and then we cite numerous cases in our brief how that sort of temporary taking can be compensable. And again, I would also just draw a distinction that these businesses were closed, like Skatemore, their roller skating rink. They were 100% closed. At this stage of the proceeding, you know, we're supposed to look at the complaint and accept what we alleged is true. If they're coming back and saying that's not true, they weren't 100% closed, that's a question of fact and should be sent back to the trial court to determine. Well, really, it's really quite that simple. The bowling alley, for example, can't operate as a bowling alley, but if they want to install takeout food or something, that's permitted. But the owner may, of his own volition and choice, decided, well, I don't want to provide takeout food or do alternative arrangements, I just don't want to do that, so I'm just going to close altogether. So I mean, there might be an element of choice involved here as well. Well, I would say that our situation is different, especially, I'll go back to the Skatemore argument. This was a roller skating rink that had no capability to do takeout food. I don't think it's fair or fits the description to say, you know, you're a business, do something complete. How do you really know that? They wanted to bring in a portable kitchen or set up an operation because there was sufficient space. How do you know that it was a virtual impossibility to convert to something else? Well, I would argue that there's no... Are we just supposed to take your word for that? Well, Your Honor, I would argue that the takings clause doesn't require that, you know, you have to completely abandon your current business and start a new business doing something you've never done and therefore it can't be a taking. I mean, there has to be some limiting principle where if I own a business, I'm just a roller skating rink, and the government says, you're completely shut down, you can do nothing else, there has to be a limiting principle there. And I would say it can't be where you could just start a new business doing something completely different. I'm out of time. Okay. Are there... I think we have your argument in hand. All right. Thank you. Thanks very much. Appreciate being here. Sure. And the case is submitted.